# WHEELING.

## McNeel's Ex'ors v. Auldridge.

| 25 | 113 |
|----|-----|
| 34 | 749 |
| 25 | 113 |
| 38 | 409 |
| 25 | 113 |
| 61 | 557 |

Submitted September 14, 1883. Decided November 15, 1884.

*(Snyder, Judge, Absent.)

1. The 8th, 9th and 10th points in the syllabus of *Neely* v. *Jones*, 16 W. Va. 625, again asserted. (p. 117.)

2. Generally, where one has agreed to pay the debt of another, if that other does not pay it, the property of the one thus making the promise cannot be subjected to the payment of the debt, until the property of the original debtor is first exhausted; and in a suit to subject the property of him collaterally bound it is necessary to make defendants the personal representatives and heirs of the original debtor, he being dead. (p. 117.)

3. If in a suit in chancery the issue is made, that a deed absolute on its face was intended to be a mortgage, it becomes absolutely essential to the decision of that question, that the parties to said deed or their heirs should all be parties to the suit. (p. 117.)

The facts of the case are fully stated in the opinion of the Court.

No appearance for appellant.

*R. S. Turk*, for appellee.

JOHNSON, PRESIDENT:

On April 13, 1867, Joseph Feamster, guardian, &c., recovered in the circuit court of Greenbrier county a judgment

*Counsel below.

against John H. Ruckman, principal, and Paul McNeel and Joseph Beard, his sureties, for the sum of $4,400.00, subject to a credit of $900.00. This judgment the sureties, McNeel and Beard, were compelled to pay.

Paul McNeel and Joseph Beard filed their bill in Pocahontas county. to enforce the lien of said judgment for their benefit against the lands of John H. Ruckman, among which were included two tracts previously sold by said J. H. Ruckman to Samuel Auldridge, the bill claiming that said sales were illegal and void, and that the acknowledgment and recordation of the deeds were void, &c.

On October 6, 1867, while said suit was still pending, Paul McNeel, Joseph Beard and Samuel Auldridge entered into the following contract:

" Whereas a suit in chancery is now pending in the circuit courf of Pocahontas county in the name of Paul McNeel and Joseph Beard, plaintiffs, and John H. Ruckman, Samuel Auldridge and others, defendants, to which reference is here made. Now, in order to compromise and settle all litigation and dispute, so far as the undersigned plaintiffs and Samuel Auldridge, defendant, are concerned, this agreement is made and entered into as follows: The said Paul McNeel and Joseph Beard agree to dismiss their suit so far as the said Samuel Auldridge is concerned, and they further agree not to sell the land under-said bill or suit which was sold to said Auldridge by John H. Ruckman.

" In consideration of all which the said Auldridge agrees to execute his two bonds for $1,000.00 each, dated this day with interest from date, due five years from date, one payable to Paul McNeel and the other to Joseph Beard; and the said McNeel and Beard further agree to.indemnify said Auldridge against all loss which he may sustain by virtue and in conquence of any claim held at this time by one William H. McClintic against and upon said land so purchased by him as aforesaid from said John H. Ruckman.

" Witness the following signatures and seals this the 6th day of October, 1869."

" Paul McNeel.     [Seal.]
" Joseph Beard.     [Seal.]
" Samuel Auldridge.  [Seal.]"

"(a condition.)

"If the said John H. Ruckman pays the security-debt, which debt the bonds above referred to are to secure, the said agreement and bonds shall be wholly *null* and *void*.

"Paul McNeel.  [Seal.]
"Joseph Beard.  [Seal.]
"Samuel Auldridge.  [Seal.]"

Auldridge executed the said two bonds in pursuance of said agreement. On March 11, 1872, the said suit mentioned in said agreement was dismissed as to all the parties.

On March 12, 1870, John H. Ruckman and wife conveyed to Paul McNeel and Joseph Beard a large amount of real property. The deed is an absolute conveyance on its face. It recites the indebtedness of Ruckman to the grantees and proceeds: " Now therefore in consideration of his said indebtedness aforesaid, and in order to pay off and discharge said indebtedness to said Paul McNeel and Beard, the said Ruckman and wife hereby grant and convey to said McNeel and Beard the following described tracts or parcels of land, &c."

Some time after the execution of this deed Paul McNeel died, judgments having been recovered on the said two bonds as well as on a bond given to Paul McNeel for purchase-money on a tract of land purchased of him, about which there is no controversy. On March 14, 1877, the executors of Paul McNeel and Joseph Beard brought this suit to enforce the payment of the said judgments against the lands of Samuel Auldridge.

This suit was brought against Samuel Auldridge, John J. Gay, Geo. S. McNeel and William H. Auldridge, trustees in a deed of trust executed by Samuel Auldridge, William Auldridge, trustee in another deed of trust executed by said Auldridge, the partners constituting the firm of A. L. Ellett & Co., George P. Moore, trustee in another deed of trust, Henry Barlow, *cestui que trust*, and Snyder and Beard *cestuis que trust*, in the other tracts, James Auldridge, Sarah McClure, son and daughter of William Auldridge deceased and McNeel and wife, legatees under the last will of said William Auldridge deceased, through which will Samuel Auldridge derived title to a part of the land sought to be

sold in the suit. The will shows certain legacies a charge on the said land, and only about half of said legatees are made defendants in said suit.

In April, 1879, Samuel Auldridge filed his cross-bill in said cause, in which he charged, that the deed executed by Ruckman and wife on the 12th day of March, 1870, was an absolute deed and was a payment of the whole indebtedness of Ruckman to McNeel and Beard, and that by the terms of the contract between himself and McNeel and Beard he was released from any obligation to pay the said two bonds of $1,000.00 each. McNeel's executors and Beard answered, claiming and insisting that the said deed was intended to be and was a mortgage, and that the two bonds of $1,000.00 each were not paid, because the whole property conveyed to them would not discharge the debt of Ruckman to them, that would remain after the two bonds and interest had been paid. The court on the 1st day of May, 1877, referred the cause to a commissioner to ascertain the liens against the lands of Auldridge, &c. On the 29th day of September, 1879, the court in the absence of Ruckman's representative and heirs held, that the deed of March 12, 1870 must be treated as a mortgage and not as an absolute deed, and recommitted the report to the commissioner and required him to ascertain and report, "what credits the said Ruckman is entitled to on his debt of $4,400.00 due to Joseph Beard and to Paul McNeel's estate, entering as credits the money received by them for lands sold under the deed aforesaid and any other payments made, and show the balance due upon said debt; second, whether in the sale of said lands the said McNeel and Beard have as mortgagees acted judiciously; third, the value and description of the unsold lands conveyed by said deed." By decree entered in the cause on the 29th day of September, 1880, the unsold lands conveyed by said deed of March 12, 1870, were ordered to be sold, and commissioners were appointed for that purpose. The commissioners reported they had sold 2,400 acres and the half of another tract of 2,400 acres to Joseph Beard for ten cents an acre, amounting to $360.00. There was no exception to this report, and it was confirmed. The final report of the commissioners being submitted showing an indebtedness of Ruckman to McNeel and Beard of $6,130.99, the

court rendered a decree against Auldridge for the full amount of the two bonds and the debt due for purchase-money and proceeded to order amounts of money to be paid to various persons having liens, who were not parties to the suit. From these various decrees Auldridge appealed.

Before the lands of Samuel Auldridge could be properly sold to discharge the liens thereon, there should have been made parties to the suit all who had obtained judgments in the courts of record in the county, in which the land sought to be subjected is situated, also all who had obtained judgments in any part of the State or before justices and had docketed them in the county, where the land sought to be charged is situated. If this is not done, and such persons are not made parties either formally or informally, and the fact is disclosed by the record, the Appellate Court will reverse any decree ordering the sale of the lands or the distribution of the proceeds of sale. If however parties have been made defendants informally by being called by publication before a commissioner under a decree of the court to present their judgments, a decree ordering the sale will not be reversed, because such parties were not formally made defendants, unless objection was made to the entering of such decree before rendered in the court below, because such parties were not made formal defendants. *Neely* v. *Jones,* 16 W. Va. 625 and numerous more recent cases. It is strange, that this rule so simple in itself is not better understood. Several parties having liens, as the record discloses, in Pocahontas were not made defendants either formally or informally. This is sufficient to reverse the decree for the sale of Auldridge's lands.

It appears from an allegation of the cross-bill, that John H. Ruckman is dead. His personal representatives and heirs should have been made defendants to the original bill, because it clearly appears from the record, that the liability of Auldridge was clearly collateral to that of Ruckman. It was Ruckman's debt, a part of which Auldridge agreed to pay; but he was to pay it only in case Ruckman did not pay it. The whole record shows this. Not until all of the resources of Ruckman liable to the satisfaction of said debt were exhausted, could McNeel and Beard go upon the

property of Auldridge for the satisfaction thereof. Therefore the personal representatives and heirs of John H. Ruckman were indispensible parties to the suit. They were necessary parties for another reason. It is disputed in this suit, whether the deed of March 12, 1870, executed by Ruckman and wife to McNeel and Beard was an absolute deed or a mortgage. If it was an absolute deed, then by its very recital, which is against Auldridge, McNeel and Beard were estopped to deny, that the debt was fully paid and Auldridge discharged entirely from the obligation of the two bonds for $1,000.00 each. If it was a mortgage, then the personal representatives and heirs of Ruckman were interested to know, that the property had not been sacrificed, and that the proper credits upon their debt had been given, and to receive the surplus, if any, after the debt was paid.

There is evidence in the record of acts of the parties and declarations tending to show, that the deed was at the time of its execution intended to be an absolute conveyance of the property in fee, and other evidence tending to show, that it was intended as a mortgage. The question ought not to be determined either way in the absence of the heirs of John H. Ruckman. As John H. Ruckman is dead, all his creditors both lien and open contract creditors should be made parties to the suit, as they are all interested. As one of the tracts of land of Samuel Auldridge was devised to him by William Auldridge and appears by the will to be charged with the payment of certain legacies, all the legatees should be made defendants.

The sale of the 3,600 acres of land, although confirmed without objection, is not protected under section 8 of chapter 132, because the record shows, that, as the court held the deed of March 12, 1870, was a mortgage, the heirs of Ruckman were the owners of the equity of redemption and were interested in the property but were not parties to the suit. This would apply to any lands of Ruckman sold in this suit. (*Underwood* v. *Pack*, 23 W. Va. 704.)

The sale will have to be set aside. All the decrees entered in the cause must be reversed with costs to the appellant. The sale of the 3,600 acres and any other sales of Ruckman lands made in this cause, if any, must be set aside, and the pur-

chasers placed in *statu quo ;* and this cause is remanded to the circuit court of Pocahontas county with leave to the plaintiff to file an amended bill making the proper parties defendants, as indicated in this opinion, and for further proceedings to be had in the cause.

REVERSED.   REMANDED.